## TRIMBLE ET AL. v. MARSHALL.

1. **Estates of Decedents:** FRAUD IN ALLOWANCE OF CLAIM: FACTS NOT CONSTITUTING. The evidence in this case considered, and *held* not to show fraud in the allowance of a claim against an estate.

2. ———: ALLOWANCE OF CLAIM: STATUTE OF LIMITATIONS: DUTY OF ADMINISTRATOR. An administrator is not in duty bound to plead the statute of limitations against a claim filed against the estate, when he believes the claim to be just and unpaid, even though such plea might defeat the claim.

*Appeal from Des Moines Circuit Court.*

WEDNESDAY, JUNE 3.

ACTION in equity to set aside an administrator's sale of real estate. There was a decree for the plaintiffs. The defendant appeals.

*P. Henry Smythe & Son* and *Thos. Hedge, Jr.*, for appellant.

*Poor & Baldwin*, for appellees,

ADAMS J.—The plaintiffs, T. B. Trimble, John Trimble and D. P. Trimble, are sons and part of the heirs at law of A. G. Trimble, deceased. The defendant obtained the allowance of a claim against the estate of the decedent, and a certain lot in the city of Burlington, belonging to the estate, was sold to pay the claim, the defendant being the purchaser. The plaintiffs aver that the claim, with the exception of a small portion, was without foundation, and that the allowance was pro-

cured by fraud. In our opinion the plaintiffs' position cannot be sustained. The claim for the most part is for money alleged to have been loaned by the defendant to the decedent, and for board and washing furnished the decedent during eleven years, commencing with 1866, for which a uniform charge was made of $140 per year.

That the decedent made his home at the defendant's house most of the time during those years seems to be certain. He evidently regarded the house as his home, and both he and his wife died there. The defendant was his son-in-law, and his relations to the defendant appear to have been of an amicable character. He was absent some, a part of the time doing business in a neighboring town; but during such time he kept his clothing at the defendant's house, and returned to it weekly, and had his washing and mending done there. Precisely how much of the time he was there it is impossible to determine. No accurate account seems to have been kept, and the evidence is loose and conflicting.

We have to say, however, that we cannot find from the evidence that the allowance was procured by fraud. Possibly some of the circumstances relied upon by the plaintiffs might, under the ingenious treatment of the plaintiffs' counsel, seem to so indicate; but, properly considered, we cannot regard them as of that character which would justify us in finding fraud. The decedent does not seem to have been a man of much means. The real estate in controversy appears to have been all that he had, and this, it is shown, he expected the defendant to have as his compensation for giving him a home. One witness, who appears to be wholly disinterested, testified that the decedent said that his property would not half pay the defendant for his trouble and expense. It is not our custom, in cases of this kind, to set out the evidence in detail, nor attempt to discuss it at all, even in a general way. Two or three matters upon which the plaintiffs principally rely may properly be noticed.

The administrator was one R. M. Trimble, a son of the

deceased, and brother of the plaintiffs. His appointment was brought about, to some extent, through the solicitation and procurement of the defendant. His bond was signed by the defendant, and he was assisted by the defendant in procuring other signers. He did not live in Des Moines county, where the estate was to be administered upon, but in Van Buren county. He was not much acquainted with the business of administering upon estates, and accepted the appointment with some reluctance. These facts are relied upon as indicating fraud in procuring the allowance. But the decedent's wife being dead, the class next entitled to administer were his children; (Code, § 2354;) and, among his children, R. M. Trimble, we think, without question, was the most suitable person. We do not see how the defendant's nomination of such a man should be regarded as a ground of suspicion. Nor can we regard the way the bond was procured as a ground of suspicion. It was, to be sure, signed by the defendant, but he was the administrator's brother-in-law, and, besides, was a resident of Des Moines county, where the bond was to be given. It was probably signed by one or more of the defendant's friends, but the administrator might have been, and probably was, among comparative strangers in Des Moines county.

Another circumstance relied upon is that Mr. S. K. Tracy, who had been employed as an attorney to represent the estate, and had filed an answer with the view of contesting the claim, was discharged about the time the claim came on for hearing, and at the hearing the estate was not represented by any attorney. There is also evidence tending strongly to show that the administrator discharged Mr. Tracy upon the advice of the defendant. But the administrator had already determined not to resist the claim, and for the reason that he had personal knowledge of the claim, and believed it to be correct. He says in his testimony, while being examined for the plaintiffs: " I knew the general bill; I believed it to be correct; that was my best judgment. *    *    * I believed that his bill, take it as a whole, was just, from what I knew of it during

my life-time." On cross-examination he testified as follows:
"*Interrogatory* 8. Well, about the time that you concluded
you didn't need Mr. Tracy's services, you told Dr. Mar-
shall [the present defendant] that you were satisfied that the
bill was right; that you wouldn't make any opposition?
*Answer.* I believe I did. *Int.* 9. You came to us often
and told us the same thing? *A.* I believe I did. *Int.* 13.
And don't say to-day that there was anything wrong? *A.*
No, sir." It was also shown that when the claim was heard
he went upon the stand and testified to its correctness. We
think that the administrator honestly concluded that Mr.
Tracy's services were not needed, and that his further employ-
ment would subject the estate to a useless and improper

2. ——: al-
lowance of
claim : stat-
ute of limita-
tions : duty
of adminis-
trator.
expense. Whether the plea of the statute of limi-
tations could have been successfully interposed to
a part of the claim we need not determine. The
failure to employ an attorney to plead the statute
cannot be regarded as fraudulent. *Welch v. McGrath,* 59
Iowa, 519.

Several other circumstances are relied upon by the plaint-
iffs as showing fraud, but to our mind they are not sufficient.
They are by no means inconsistent with an honest belief on
the part of the administrator in the substantial correctness of
the claim; and we do not see that unfair means were employed
by the claimant.

REVERSED.